641 So.2d 538 (1994)
Virginia H. WHITE, Plaintiff-Appellant,
v.
Debbie M. WHITE & James A. White, III, Defendants-Appellees.
No. 93-1389.
Court of Appeal of Louisiana, Third Circuit.
June 15, 1994.
Rehearing Denied August 31, 1994.
Opinion Concurring in Part and Dissenting in Part September 14, 1994.
*539 Howard N. Nugent Jr., Alexandria, for Virginia H. White.
Charles Stovall Weems III, Alexandria, for Debbie M. White and James A. White III.
Before DOUCET, YELVERTON and THIBODEAUX, JJ.
Opinion of Justice Thibodeaux Concurring in Part and Dissenting in Part September 14, 1994.
DOUCET, Judge.
The main issue in this suit for damages is whether the plaintiff, Virginia H. White, has stated a cause of action for intentional interference with a contract and intentional infliction of emotional distress.
On May 7, 1993, Virginia, ex-wife of James A. White, III, filed a first amended petition, naming as defendants, James and his current wife, Debbie White.
Virginia's petition alleges that she and James entered into a community property settlement in March, 1991. In accordance with the community property settlement, James was to retain possession of the former matrimonial home located in Alexandria, Louisiana. Further, he was to hold Virginia harmless for all claims in connection with the mortgage on the home which was held by First Federal Savings and Loan Association of Alexandria for the principal sum of $405,000.00. James also obligated himself to pay the mortgage note in the amount of $157,000.00 held by Pelican Homestead and Savings Association on the home occupied by Virginia in New Orleans.
Virginia further alleges that the community property settlement provided that James would pledge to Virginia a life insurance policy on his life as security on his obligation to pay the mortgage on the New Orleans home. This life insurance policy was issued by Pan American Life Insurance Company for a ten year term in the amount of $135,000.00 and assigned to Pelican.
Virginia's petition further alleges that James was and remains the owner of a life insurance policy insuring her life in the amount of $1 Million. She claims that she was the owner of a life insurance policy insuring James's life in the amount of $2.5 Million which, subsequent to her divorce from James, was transferred to him upon his oral promise to maintain both policies and name their children as beneficiaries.
In October 1990, after the divorce but before the execution of the community property settlement, James and Debbie were married in San Francisco, California. They then moved to Louisiana. In November 1991, Virginia was contacted by counsel for Pelican and informed that James failed to make the required payments on the loan on the Alexandria property and that Pelican was seeking $7,705.30 to cover the two monthly payments past due, as well as late charges and attorney's fees.
Virginia claims that James and Debbie attempted to deprive her of her rights under the community property settlement by developing a plan whereby Debbie was to purchase the note from Pelican for the Alexandria property, after which James would neither honor nor pay the note as contemplated in the community property settlement. Virginia claims that the plan was for Debbie to then pursue Virginia for the payment of the *540 loan, thereby circumventing James's obligation to pay under the terms of the settlement. Virginia claims that this plan was designed to harass and strip her of her property rights by forcing her to sell and pay the note on the New Orleans property or to refinance it in her name alone, thereby releasing James from the debt and any further payments to her. The petition further alleges that James and Debbie were attempting to force her to sign releases on all of the properties owned by James.
In furtherance of the plan, the petition further states that Debbie threatened that James would seek bankruptcy protection to release him of his obligations under the settlement.
On May 21, 1992, Debbie in fact acquired, by assignment, the loan secured by a mortgage on the Alexandria home. James and Debbie attempted to sell the property, but the potential buyers refused to purchase unless Virginia released her right to exercise any and all resolutory conditions under the community property settlement. Virginia claims that Debbie demanded that she sign the release. Debbie allegedly threatened to sue Virginia for the remaining debt on the note if Virginia refused to sign the release. Virginia claims that she attempted, in good faith, to negotiate with Debbie in order to resolve their differences. However, Debbie continued to threaten suit as well as criminal prosecution against her and her children. Virginia claims in her petition that she waived her rights under the settlement agreement to exercise resolutory conditions regarding the sale of the Alexandria property for the amount of $200,000 and pursuant to Debbie's threats and in the hopes of resolving the dispute.
Virginia also claimed that James breached all of the obligations pertaining to the New Orleans home as well as the insurance policies due to the influence of his current wife, Debbie.
Virginia claims that she and James had a legally binding, written contract about which Debbie had knowledge. She claims that Debbie, without justification, induced and/or caused James to breach that contract as well as the oral contract pertaining to the life insurance policies. Virginia's petition alleges that James and Debbie engaged in extreme and outrageous conduct in an attempt to inflict severe mental anguish and emotional distress, and that they did inflict severe mental anguish and emotional distress on her. Virginia claims that she has suffered damages as a result of James's failure to honor his oral agreement and community property settlement, as well as damages resulting from James's and Debbie's illegal, callous, outrageous, and extreme conduct. Therefore, she seeks compensatory damages. Virginia also claims to have suffered damage due to Debbie's intentional interference with the contract between her and James.
Debbie and James filed exceptions of no right of action and no cause of action.
The trial judge dismissed all claims against Debbie, sustaining exceptions of no cause of action filed by her. In his reasons for judgment, the judge stated:
"As to the allegation of tortious interference with contract, the Louisiana Supreme Court has limited that cause of action to situations involving officers of a corporation interfering with contracts between the corporation and third parties when such interference is knowing, unjustified and intentionally causes the corporation to breach a contract or make its performance impossible or more burdensome on the other party."
In refusing to expand the tort of intentional interference with a contract beyond the bounds established by the Louisiana Supreme Court in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), the trial judge stated:
"While the court did not specifically prohibit the application of the tortious interference with contract cause of action to other situations or other business associations such as partnerships, it is extremely doubtful that it would allow such an action between individuals."
Further, in maintaining the exception of no cause of action, the trial judge reasoned that Virginia did not state a cause of action for intentional infliction of emotional distress because her allegations failed to meet the standards *541 as set forth in White v. Monsanto Co., 585 So.2d 1205 (La.1991). The trial judge stated:
"These acts, [those alleged in Virginia's petition] while perhaps unkind and inconsiderate do not appear to rise above the level of `threats,' `annoyances' or `petty oppressions.'"
In reaching this conclusion, the trial judge recited the elements that the White court stated would be necessary for Virginia to establish in order for her to recover for intentional infliction of emotional distress.
Virginia appeals that decision.
No Cause of Action
The peremptory exception of no cause of action attacks the legal sufficiency of the petition. All well-pleaded allegations of fact are accepted as true and correct for purposes of its determination. All doubts are resolved in favor of sufficiency of the petition. La.C.C.P. art. 931; Owens v. Martin, 449 So.2d 448 (La.1984); State, DOTD v. Estate of Payne, 586 So.2d 737 (La.App. 3 Cir.1991). Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. La.C.C.P. art. 865; Kuebler v. Martin, 578 So.2d 113 (La.1991). In Owens, supra, the Supreme Court, quoting from its decision in Trahan v. Liberty Mutual Insurance Co., 314 So.2d 350, 353 (La.1975), defined a cause of action as "the state of facts which gives a party a right to judicially assert an action." No evidence may be introduced by either party to support or to controvert the objection of no cause of action. La.C.C.P. art. 931; Ward v. Tenneco Oil Co., 564 So.2d 814 (La.App. 3 Cir.1990). In reviewing exceptions of no cause of action, this court must consider pleadings of fact in the petition and determine whether a remedy may be obtained in light of the allegations under any possible theory of recovery. Obermier v. State, 606 So.2d 937 (La.App. 3 Cir.), writ denied, 609 So.2d 257 (1992). For purposes of ruling on an exception of no cause of action, the court must sustain the exception only if the law affords no remedy under any evidence admissible under the pleadings. Bellah v. State Farm Fire & Casualty Ins., 546 So.2d 601 (La.App. 3 Cir. 1989).
Tortious Interference with Contract
A limited cause of action for tortious interference with contract was first recognized in Louisiana in the landmark case of 9 to 5 Fashions, Inc. v. Spurney, supra. In 9 to 5 Fashions, Inc., the Supreme Court ruled that:
[A]n officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation. (Emphasis added).
9 to 5 Fashions, Inc., 538 So.2d at 231.
The Louisiana Supreme Court intended 9 to 5 Fashions, Inc. to be extremely limited in its scope and application when it stated:
It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of `a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way.' [Citations omitted].
Id. 538 So.2d at 234.
The court divided the cause of action into five elements:
(1) The existence of a contract or legally protected interest between the plaintiff and the corporation;
(2) The corporate officer's knowledge of the contract;
(3) The corporate officer's intentional inducement or causation of the corporation to breach the contract or his intentional *542 rendition of its performance impossible or more burdensome;
(4) Absence of justification on the part of the officer;
(5) Causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
Id.
There is no allegation by Virginia that Debbie, as corporate officer, caused a corporation to breach its contract. The tort of intentional interference with a contract, as limited by the Supreme Court, applies to a corporate officer interfering with his employer's contractual relations with third persons. Here, Virginia attempts to analogize James's and Debbie's marriage to a corporation and Debbie's influence over James as his wife to that of corporate officers over the corporation's actions so as to show Debbie's interference with the contract between James and Virginia, his wife. Louisiana has not extended the application of this tort to relationships other than that outlined in 9 to 5 Fashions, Inc. To allow Virginia a cause of action would be an improper extension of 9 to 5 Fashions, Inc.
In so deciding, we simply fortify what our court has recently decided. See: Accredited Surety and Casualty Co., Inc. v. Wayne McElveen, Sheriff of Calcasieu Parish, 631 So.2d 563 (La.App. 3 Cir.1994), and what every other circuit in our State has ruled, although with varying degrees of commitment to the limited application of 9 to 5 Fashions, Inc., supra. See: Moss v. Guarisco, 409 So.2d 323 (La.App. 1 Cir.1982); Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La. App. 2 Cir.1991); Tallo v. The Stroh Brewery Company, 544 So.2d 452 (La.App. 4 Cir. 1989); Colbert v. B.F. Carvin Construction Co., 600 So.2d 719 (La.App. 5 Cir.1992).
Because there was neither a corporation nor corporate officers involved in this case, the trial court correctly held that Virginia's petition did not state a cause of action for tortious interference with contract.
Intentional Infliction of Emotional Distress
This court in Taylor v. State, 617 So.2d 1198 (La.App. 3 Cir.), writ denied, 620 So.2d 875 (1993), citing White v. Monsanto Co., supra, recognized a legally protected right to be free from serious, intentional invasions of mental and emotional tranquility. The Supreme Court in the White case ruled that a cause of action for intentional infliction of emotional distress is viable.
In White, the Louisiana Supreme Court set out the following elements which must be established in order to recover under intentional infliction of emotional distress:
(1) the conduct of the defendant was extreme and outrageous;
(2) the emotional distress suffered by the plaintiff was severe; and,
(3) the defendant desired to inflict severe emotional or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct.
White, 585 So.2d at 1209.
The element concerning extreme and outrageous conduct is satisfied only by conduct that is so atrocious as to pass the boundaries of decency and to be utterly intolerable to the civilized society. The court further explained that the extreme and outrageous character of conduct "may arise from an abuse by the actor of a position, or a relation with the other, which gives him or her actual or apparent authority over the other, or power to affect his or her interests." Id. at 1209-1210. The conduct must be intended to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like. White, 585 So.2d at 1210.
The allegations of Virginia's petition set forth all of the necessary elements as set forth in White. In paragraph 34 of Virginia's petition, she alleges:
Petitioner further shows that by the actions set forth herein, that the defendants,... did engage in extreme and outrageous conduct by which the defendants did desire to inflict severe mental anguish and emotional distress upon the petitioner, and did in fact inflict said mental anguish and emotional distress.
*543 The petition alleges that Debbie's conduct was extreme and outrageous, meeting the first element. The second element is met in that the petition alleges that Virginia suffered mental anguish and emotional distress that was severe. Finally, Virginia alleges that Debbie desired to inflict mental anguish and severe emotional distress.
We make no finding as to the merit of Virginia's claim. We are concerned here with an exception of no cause of action. In order to recover for intentional infliction of emotional distress, the aforementioned elements must be fully established. However, in order to state a cause of action for intentional infliction of emotional distress, the elements must merely be alleged in the petition. On remand, proof of Virginia's allegations may or may not stand the test. Nonetheless, we conclude that sufficient allegations are contained in Virginia's petition to sustain a cause of action for intentional infliction of emotional distress.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment that Virginia failed to state a cause of action against Debbie for intentional interference with a contract. Further, we reverse and set aside the judgment of the trial court granting the defendants' exception of no cause of action based on intentional infliction of emotional distress. The matter is remanded for further proceedings consistent with the views expressed herein.
Costs of this appeal are assessed against defendants-appellees.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, Judge, concurring in part and dissenting in part.
I concur in the reversal of the trial court's grant of summary judgment on the defendants' exception of no cause of action based on intentional infliction of emotional distress. I dissent, however, in its refusal to recognize a cause of action for tortious interference with a contract outside the scope of corporate activity.
Louisiana has unfortunately maintained an anachronistic stranglehold against the recognition of this fact. We stand alone in our intransigence.
I agree with the court's assertion that the Louisiana Supreme Court intended 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989) "to be extremely limited in its scope and application." One cannot extend this reasoning, however, to justify a refusal to apply the principles enunciated in 9 to 5 Fashions to other factual contexts. Indeed, such an argument favors extension of intentional infliction of emotional distress to instances other than corporate or a corporate officers's actions.
The sole issue in 9 to 5 Fashions was "whether an officer of a corporation owes any duty to a person having a contract with the corporation to refrain from unjustified, intentional interference with the contractual relationship." Id. at 229. Consistent with this specific issue, our supreme court acknowledged "a duty on the part of a corporate officer to refrain from the intentional interference with contractual relations between his corporation and other persons, unless there is a reasonable justification for his conduct." Id. To recognize tortious conduct under these circumstances is not tantamount to non-recognition in other areas. There is absolutely no suggestion in 9 to 5 Fashions that, under all circumstances, tortious conduct is immunized from liability when one's contractual relations are disrupted. The Louisiana Supreme Court has never declined to expand it to a non-corporate setting. The only limitation in 9 to 5 Fashions, as I interpret it, is its application to intentional, as opposed to simply negligent, acts of interference with the contract rights of another. Id. at 231, 232.
The pronouncement by the supreme court that:
"It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of `a rather broad and undefined tort in which no specific conduct *544 is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way[,]'" [Citations omitted].
Id. at 234, simply suggests that once the tort is extended, it is neither an unfettered cause of action nor should it be amorphous.
The language of 9 to 5 Fashions militates in favor of using the delictual principles of fault and the flexibility of the Civil Code to comfortably extend the tort of intentional interference with a contract to non-corporate settings. Justice Dennis, writing for the court, observed that "the basic concept of a civil code is that of a statement of general principles of law capable of governing the affairs of present and future generations," and the code must constantly be applied to unexpected issues and circumstances unforeseen by its redactors. Id. at 233; Shael Herman, The Louisiana Civil Code: A European Legacy for the United States, pp. 6-7; 50-52 (1993). In my view, refusal to recognize a cause of action for tortious interference with a contract generally and under the circumstances of this case would be "discordant with the fundamental civil law principle that obliges a person to repair damage caused another by his fault." Id.; La.Civ. Code art. 2315.
Indeed, Article 2315 "places no geographical or occupational limitations on the notion of `fault'," Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1334-35 (La. 1978), nor does it indicate when one is at fault. When the redactors mentioned "any act," they
"... had in mind the repression of the innumerable acts which constituted faults under whatever form they appeared. The framers conceived of fault as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault. 2 M. Planiol, Treatise on the Civil Law, Part 1, Sections 863-865 (1959)"
Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1156 (La.1988).
Article 2315 provides, then, for a concept of fault which considers the conduct and misconduct of modern society. Its flexibility and breadth allow recovery for tortious deviation in this case. Its fluidity relieves our courts from the tethered and myopic constraints of nineteenth century thinking which undermine the formulation of a cause of action based on tortiously inducing a contractual breach.
Several opinions reflect a growing concern over the reluctance of Louisiana courts to expand the concept to non-corporate entities. See, e.g., Durand v. McGaw, 635 So.2d 409 (La.App. 4th Cir.1994) (Ward, J. concurrence); Tallo v. The Stroh Brewery Co., 544 So.2d 452, 455 (La.App. 4th Cir.1989) (Schott, C.J. concurrence); Neel v. Citrus Lands of La., Inc., 629 So.2d 1299, 1301, (La.App. 4th Cir.1993); Moss v. Guarisco, 409 So.2d 323 (La.App. 1st Cir.1982) (though concluding that no cause of action existed, was highly critical of that position, but felt that, as an intermediate appellate court, it was "duty bound" to apply the law as interpreted by the Louisiana Supreme Court).
The observation in Moss v. Guarisco is correct. However, our supreme court has never held that the theory of tortious interference with a contract does not apply to a non-corporate environment. If positive law exists, courts are bound to follow it. Here, there are no authoritiesstatutory, codal, constitutional, or jurisprudential which deny a cause of action based on such conduct. Consequently, the time is ripe for our supreme court to utilize the broad mandate of Article 2315 and recognize a cause of action based on tortious interference with a contract, proceeding equitably and relying on "justice, reason and prevailing usages," La. Civ.Code art. 4, to give meaning to the concept of fault in such a formulation.