689 So.2d 516 (1997)
Amanda Carol COWEN, Plaintiff-Appellant,
v.
David H. STEINER, M.D., Defendant-Appellee.
No. 96-830.
Court of Appeal of Louisiana, Third Circuit.
January 22, 1997.
Rehearing Denied April 8, 1997.
*518 Allan Dale Smith, for Amanda Carol Cowen.
Chris Smith, III, New Orleans, for David H. Steiner, M.D.
Before SAUNDERS, PETERS and GREMILLION, JJ.
PETERS, Judge.
Amanda Carol Cowen appeals a judgment which determined that her pleadings failed to state a cause of action or right of action for intentional interference with contractual relations and intentional infliction of emotional distress in connection with her suit against Dr. David H. Steiner.

DISCUSSION OF THE RECORD
Amanda Carol Cowen included the following allegations in her pleadings. Sabine Valley Hospital, L.L.C., is a medical rehabilitation facility serving Southwest Louisiana in Merryville, Louisiana. Although a corporation, Sabine is wholly co-owned by Mark Goff and Jimmy Morgan. Alan Fisher is the hospital administrator, and Dr. David H. Steiner, an orthopedist, is the medical director. The hospital employs over thirty people, including licensed physical, occupational, and speech therapists; a nutritionist; a pharmacist; radiologists; laboratory specialists; case managers; medical doctors; and licensed nurses. Dr. Steiner was an independent contractor, and not an employee of Sabine. As the medical director and the only staff orthopedist, Dr. Steiner was the de facto "`gate keeper.'" It was his responsibility to determine the necessity and the extent of in-patient treatment for every prospective patient.
Ms. Cowen also alleged that on January 31, 1994, Sabine entered into an oral contract of employment with Ms. Cowen. The contract required Ms. Cowen to begin employment with the hospital's marketing department as a marketing representative. Ms. Cowen did not know that Dr. Steiner was employed by the hospital until approximately February 7, 1994. Ms. Cowen had previously worked for Dr. Steiner as his past-due-accounts-receivable collection specialist. This work was on a part-time basis in Leesville, Louisiana, at Dr. Steiner's private office during the period from October 1988 to August 1989. Ms. Cowen's employment with Dr. Steiner was terminated because of allegations of theft against her while in the employ of Dr. Steiner, which allegations against her were true in that she took money from Dr. Steiner without his authorization. In August 1989, Dr. Steiner performed surgery on Ms. Cowen and allegedly committed medical malpractice; a lawsuit is currently pending and waiting final disposition.
Ms. Cowen further alleged that on the morning of Thursday, March 24, 1994, a meeting was held at which Mr. Goff, Mr. Morgan, Mr. Fisher, and Dr. Steiner were present. The stated purpose of the meeting was for Dr. Steiner to sign his employment contract with Sabine. However, Dr. Steiner informed those present that he would not sign the contract until Ms. Cowen was fired. Dr. Steiner knew that Mr. Goff and Mr. Morgan were aware of the difficulty they would have in finding a replacement orthopedic doctor to work in such a small, rural hospital. Using his position as medical director, Dr. Steiner stated at this meeting to the owners that unless Ms. Cowen was fired immediately, he was "`walking out.'"
According to Ms. Cowen's pleadings, in the late afternoon of the same day, Mr. Goff summoned her to his office and told her:

*519 "This is the hardest thing I've ever had to do; but when you have a Medical Director pulling your strings, then you do what you are told. I'm going to have to let you go, but it has nothing to do with you. You've done a bang-up job!"
Mr. Goff then gave Ms. Cowen her "`pink slip,'" checking simply "`Discharge, (Fired)'" and writing on it "`Terminated'" as the explanation for the termination. On Monday, March 28, 1994, Dr. Steiner "`rewarded' " the owners by confecting a written employment contract with the hospital, guaranteeing his professional services to the facility on a permanent basis.
Ms. Cowen contended that by acting in such a prohibited manner, Dr. Steiner breached his duty to refrain form intentional, unjustified and malicious interference with the contractual relationship between the hospital and Ms. Cowen as per 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989); La.Civ.Code art. 2315; and all other applicable jurisprudence and statutes. Ms. Cowen also alleged that the actions of Dr. Steiner constituted the tort of intentional infliction of emotional distress in that the conduct was extreme and outrageous, the emotional distress suffered by her was severe, and Dr. Steiner desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Ms. Cowen also alleged that the extreme and outrageous character of Dr. Steiner's conduct arose from an abuse of his position as medical director as well as his relationship with Sabine, which gave him power to affect his interests in specifically obtaining the termination of Ms. Cowen.
Dr. Steiner filed a peremptory exception of no cause of action or no right of action. On February 8, 1996, a hearing was held on the exception. The trial court sustained the exception as to the allegations of tortious interference with contractual relations and ordered those allegations stricken from the petition. The trial court found that the facts regarding the allegations of intentional infliction of emotional distress were not alleged, and the court granted the exception of failure to state a cause of action in that regard. The court granted a fifteen-day period to file the appropriate amendments alleging facts sufficient to support the allegations of intentional infliction of emotional distress. The record contains no amendments by Ms. Cowen in response to the trial court's statements. The trial court dismissed Ms. Cowen's claim. Ms. Cowen appeals.

OPINION
Although Dr. Steiner filed an exception of no cause of action or no right of action, the substance of Dr. Steiner's exception is that of no cause of action rather than no right of action. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy to the plaintiff on the facts that are alleged in the petition. Everything on Wheels Subaru, Inc. v. Subaru S., Inc., 616 So.2d 1234 (La.1993). Evidence may not be introduced to support or controvert the objection of no cause of action. La.Code Civ.P. art. 931. Thus, the court must review the petition and accept well-pleaded allegations of fact as true, and the issue is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc., 616 So.2d 1234. However, the mere conclusions of the pleader that are unsupported by facts do not set forth a cause of action, since Louisiana retains a system of fact pleading. Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127.

Tortious Interference with Contractual Relations
In 9 to 5 Fashions, Inc., 538 So.2d 228, the supreme court recognized a duty on the part of a corporate officer to refrain from the intentional interference with contractual relations between the officer's corporation and other persons, unless a reasonable justification for the officer's conduct exists. Specifically, the court stated:
[A]n officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or *520 impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.
Thus, an officer is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of his corporation. Where officers knowingly and intentionally act against the best interest of the corporation or outside the scope of their authority, they can be held liable by the party whose contract right has been damaged.
Id. at 231.
The action against a corporate officer for intentional interference with contractual relations contains the following elements:
(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
Id. at 234.
In the instant case, Ms. Cowen alleged the existence of an employment contract between herself and Sabine, Dr. Steiner's intentional inducement of the corporation to breach the contract, absence of justification in that Mr. Goff told her that she had done a "`bang-up job'" and that "`it [had] nothing to do with [her],'" and causation of damages. However, Ms. Cowen did not allege that Dr. Steiner was a corporate officer. Rather, she alleged that he was an independent contractor with Sabine.
While Dr. Steiner was not, in title, a corporate officer, allegations in the petition may be understood to suggest that he functioned, practically speaking, in that capacity. Even Mr. Goff, an alleged co-owner of the facility, allegedly told Ms. Cowen: "[B]ut when you have a Medical Director [Dr. Steiner] pulling your strings, then you do what you are told."
We recognize that it was not the supreme court's intention in 9 to 5 Fashions, Inc.,
to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." W. Prosser & P. Keeton, The Law of Torts § 129, p. 979 (5th ed. 1984).
Id.
Also, in discussing 9 to 5 Fashions, Inc., the supreme court in Great Southwest Fire Insurance Co. v. CNA Insurance Cos., 557 So.2d 966, 969 (La.1990), stated that it indicated in 9 to 5 Fashions, Inc., "that it would proceed with caution in expanding that cause of action."
We are also aware that the third circuit has not extended the boundaries of 9 to 5 Fashions, Inc. The case of White v. White, 93-1389 (La.App. 3 Cir. 6/15/94), 641 So.2d 538, writs denied, 94-2456, 94-2467 (La.12/19/94); 648 So.2d 402, involved allegations by the plaintiff-former wife that the former husband's current wife induced and/or caused the former husband to breach a contract between the former wife and her former husband. This court held that the plaintiff-former wife's petition failed to state a cause of action for tortious interference with contract where there was neither a corporation nor corporate officers involved in the case. Specifically, this court stated:
Here, [the former wife] attempts to analogize [the former husband's] and [his current wife's] marriage to a corporation and [the current wife's] influence over [the former husband] as his wife to that of corporate officers over the corporation's actions *521 so as to show [the current wife's] interference with the contract between [the former husband] and [the former wife].... Louisiana has not extended the application of this tort to relationships other than that outlined in 9 to 5 Fashions, Inc.

Id. at p. 7, 641 So.2d at 542. See also Guilbeaux v. Times of Acadiana, Inc., 94-1270 (La.App. 3 Cir. 8/9/95), 661 So.2d 1027, writ denied, 95-2942 (La.3/29/96), 670 So.2d 1238; Accredited Sur. & Cas. Co., Inc. v. McElveen, 93-678 (La.App. 3 Cir. 2/2/94), 631 So.2d 563, writ denied, 94-0915 (La.5/20/94), 637 So.2d 483, cert. denied, 513 U.S. 963, 115 S.Ct. 424, 130 L.Ed.2d 338 (1994).
However, we do not read 9 to 5 Fashions, Inc. as limiting an action for intentional tortious interference with contractual relations to that involving a corporate officer. As stated in the dissent in White:
There is absolutely no suggestion in 9 to 5 Fashions that, under all circumstances, tortious conduct is immunized from liability when one's contractual relations are disrupted. The Louisiana Supreme Court has never declined to expand it to a non-corporate setting. The only limitation in 9 to 5 Fashions, as I interpret it, is its application to intentional, as opposed to simply negligent, acts of interference with the contract rights of another. [9 to 5 Fashions, Inc., 538 So.2d] at 231, 232.
. . . .
The language of 9 to 5 Fashions militates in favor of using the delictual principles of fault and the flexibility of the Civil Code to comfortably extend the tort of intentional interference with a contract to non-corporate settings. Justice Dennis, writing for the court, observed that "the basic concept of a civil code is that of a statement of general principles of law capable of governing the affairs of present and future generations," and the code must constantly be applied to unexpected issues and circumstances unforeseen by its redactors. Id. at 233; Shael Herman, The Louisiana Civil Code: A European Legacy for the United States, pp. 6-7; 50-52 (1993). In my view, refusal to recognize a cause of action for tortious interference with a contract generally and under the circumstances of this case would be "discordant with the fundamental civil law principle that obliges a person to repair damage caused another by his fault." [9 to 5 Fashions, Inc., 538 So.2d at 233-34]; La.Civ. Code art. 2315.
Indeed, Article 2315 "places no geographical or occupational limitations on the notion of `fault'," Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1334-35 (La.1978), nor does it indicate when one is at fault. When the redactors mentioned "any act," they
"... had in mind the repression of the innumerable acts which constituted faults under whatever form they appeared. The framers conceived of fault as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault. 2 M. Planiol, Treatise on the Civil Law, Part 1, Sections 863-865 (1959)"

Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1156 (La.1988).
White, at 2-3, 641 So.2d at 543-44.
Under the allegations in this case, we see no valid reason to shield Dr. Steiner from a lawsuit, for which a corporate officer would be held amenable, simply because Dr. Steiner was not, in title, a corporate officer. We reach this conclusion because of the corporate context of the allegations and because it appears from the pleadings that Dr. Steiner had the power or influence that a corporate officer might have. We see no meaningful reason to relieve him of the accountability for his use of such influence and power in the corporate context simply because he did not have the title. Thus, we hold that Ms. Cowen has stated a cause of action against Dr. Steiner for intentional interference with contractual relations.

Intentional Infliction of Emotional Distress
To recover for intentional infliction of emotional distress, a plaintiff must prove:

*522 (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).
The defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities will not result in liability. Id. The extreme and outrageous character of the conduct may arise from an abuse of a position or from a relationship with the victim which gives the actor actual or apparent authority over the victim or the power to affect his interests. Id. "The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme." Id. at 1210.
Ms. Cowen alleged that Dr. Steiner informed Mr. Goff, Mr. Morgan, and Mr. Fisher that he would not sign an employment contract until Ms. Cowen was fired. Ms. Cowen also alleged that Dr. Steiner knew that Mr. Goff and Mr. Morgan were aware of the difficulty they would have in finding a replacement orthopedic doctor to work in such a small, rural hospital. Allegedly using his position as medical director, Dr. Steiner allegedly stated at this meeting to the owners that unless Ms. Cowen was fired immediately, he was "`walking out.'"
We find that Ms. Cowen alleged facts sufficient to constitute extreme and outrageous conduct. Additionally, Ms. Cowen alleged that the emotional distress suffered by her was severe and that Dr. Steiner desired to inflict emotional distress upon her or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Thus, we find that Ms. Cowen has stated a cause of action for intentional infliction of emotional distress.
In this opinion, we do not intend to make any comment on Ms. Cowen's ability to prevail on a trial on the merits; rather, we find only that she has stated a cause of action sufficient to allow her to proceed to trial on the merits.

DISPOSITION
For the foregoing reasons, we reverse the trial court's judgment and hold that Ms. Cowen has stated a cause of action for tortious interference with contractual relations and for intentional infliction of emotional distress. We assess costs of this appeal to the defendant.
REVERSED.