693 So.2d 1183 (1997)
Kenneth J. GUILBEAUX, PlaintiffAppellant,
v.
The TIMES OF ACADIANA, INC., et al., DefendantsAppellees.
No. 96-360.
Court of Appeal of Louisiana, Third Circuit.
March 26, 1997.
Rehearing Denied June 18, 1997.
*1184 Anthony Fazzio, for Kenneth Guilbeaux.
John Edmund McElligott, Jr., Lafayette, for Times of Acadiana Inc., et al.
David Arthur Hurlburt, Lafayette, for Kevin Kean.
Charles S. McCowan, Jr., Mathile Watsky Abramson, Baton Rouge, for Grand Casinos, Inc.
Fred Morris Trowbridge, Jr., J. Roumain Peters, III, New Orleans, for American Family Mutual Insurance Co.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
THIBODEAUX, Judge.
Kenneth J. Guilbeaux appeals two separate judgments made by two separate trial courts. One held that statements made by defendant, Kevin M. Kean, about his business dealings with Mr. Guilbeaux which were subsequently published in The Times of Acadiana were not defamatory. The other trial court found that statements made in conversation between Mr. Kean and Ann Myers and in conversation between Mr. Kean and Kim Favaloro were also not defamatory and granted summary judgment in favor of Mr. Kean and Grand Casinos, another named defendant.
*1185 We affirm the judgments of the trial courts for the following reasons.

I.

ISSUES
The issues presented on appeal are whether the trial court properly granted: (1) Mr. Kean's and Grand's exceptions of no cause of action regarding the statements made to The Times of Acadiana; and, (2) Grand's and Mr. Kean's summary judgment motions regarding the statements made to two individuals, Kim Favaloro and Ann Myers.

II.

FACTS
Kenneth Guilbeaux discussed the possibility of developing riverboat gambling in the Lafayette area with Kevin Kean. The relationship between Mr. Guilbeaux and Mr. Kean soured. Subsequently, Mr. Kean made statements to The Times of Acadiana regarding the future of Mr. Guilbeaux's business proposition. Mr. Guilbeaux alleges that Mr. Kean told the Times that Mr. Guilbeaux threatened his life and made it appear to The Times that Mr. Guilbeaux was a dangerous and violent man. Mr. Kean then repeated these statements to Ann Myers and to Kim Favaloro. At the time the statements were made, Mr. Kean owned and operated Kevin Kean Company which, among other activities, was a partner with Grand Casinos, Inc. in a joint venture involving gaming operations on Indian Tribal Land.
Mr. Guilbeaux filed a defamation suit against The Times, Mr. Kean, and Grand Casinos, Inc. In this initial suit, Mr. Guilbeaux alleged that he was defamed by the publication of an article in The Times which discussed his business dealings with Mr. Kean and Grand. The trial court found, and this court affirmed, that the alleged defamatory statements did not state a cause of action in defamation as it relates to the Times. Since Mr. Guilbeaux's appeal on Mr. Kean's and Grand Casinos' exceptions of no cause of action was an appeal of a partial final judgment and, therefore, premature, we remanded these proceedings. See Guilbeaux v. The Times of Acadiana, 94-1270 (La.App. 3 Cir. 8/9/95); 661 So.2d 1027 ("Guilbeaux I").
Mr. Guilbeaux alleged that Mr. Kean made defamatory statements to Ms. Myers and Ms. Favaloro. Mr. Kean and Grand brought summary judgment motions before the trial court amid various other motions. The Honorable Judge Thomas Duplantier granted Mr. Kean's and Grand's motions. The court found that Mr. Kean had no authority to represent Grand in the discussion held between Mr. Kean and Mr. Guilbeaux. The court also found that the conversations among Mr. Kean and Ms. Myers and Ms. Favaloro were substantially the same statements and allegations set forth in The Times of Acadiana, which were previously held to not be defamatory.

III.

LAW & DISCUSSION

No Cause of Action
Mr. Guilbeaux argues that Judge Cox erred when he concluded that the statements made by Mr. Kean to the Times of Acadiana were not defamatory and subsequently dismissed the case against Grand, The Times of Acadiana, and Mr. Kean in relation to the statements made in the newspaper. This court has determined this issue already as it relates to statements published in the Times of Acadiana in Guilbeaux I where we held that the published statements did not constitute defamatory words and were not actionable. Guilbeaux, 661 So.2d 1027. This court did not address Mr. Kean's or Grand's exceptions of no cause of action because the appeal brought to us was a partial final judgment. The judgment which was the subject of the previous appeal only concerned the statements published in The Times of Acadiana. If an appeal is taken of a partial final judgment, then the trial court has jurisdiction over the remaining issues of the case. La.Code Civ.P. art. 1915. This court is now in a position to address Mr. Kean's and Grand's exceptions of no cause of action.
An appellate court's ruling on an exception is the law of the case if after remand the same point is again asserted *1186 upon a second appeal to the same court. Keller v. Thompson, 134 So.2d 395 (La.App. 3 Cir.1961). The "law of the case" principle allows courts to refrain from reconsidering prior rulings on the same case in a subsequent appeal. The principle relates to:
(a) the binding force of trial court rulings during later stages of the trial;
(b) the conclusive effects of appellate rulings at the trial on remand; and,
(c) the rule that an appellate court will ordinarily not reconsider its own rulings on a subsequent appeal in the same case.
Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81, 83 (La.1973). Courts apply this principle to avoid indefinite relitigation of the same issue, to reach consistent results in the same litigation, and to afford a single opportunity for argument and decision of the matter at issue. Barnett v. Jabusch, 94-819 (La.App. 3 Cir. 2/1/95); 649 So.2d 1158. All of these factors provide for efficiency in the judicial system and fairness to the parties involved. Barnett, 649 So.2d 1158. The law of the case principle is to be used as a discretionary guide. Argument is not barred in cases of "palpable former error or so mechanically as to accomplish manifest injustice." Petition of Sewerage & Water Board of New Orleans, 278 So.2d at 83.
In Guilbeaux I, this court first determined that to test the sufficiency of the pleadings under an exception of no cause of action, it must determine whether the law affords a remedy on the pleadings. Guilbeaux, 661 So.2d 1027. We then analyzed the statements made according to the elements of defamation and held that the statements in the article did not constitute defamatory words. Guilbeaux, 661 So.2d 1027. The words in the article which we previously determined to be non-defamatory in relation to the Times of Acadiana are the same words which have been attributed to Mr. Kean and Grand. Accordingly, those words are also not defamatory. This is not a case where there is doubt in our prior decision. Following the principle of the law of the case, this issue has already been decided and need not be reconsidered.
Mr. Guilbeaux further alleges that the trial court incorrectly sustained Mr. Kean's and Grand's exceptions of no cause of action for negligent interference with business relations and for intentional infliction of emotional distress. These issues were also alleged on appeal and considered by this court in Guilbeaux I. The findings of Guilbeaux I are now the law of the case. In Guilbeaux I, this court found that a cause of action did not exist neither for tortious interference with business relations nor for intentional infliction of emotional distress. Guilbeaux, 661 So.2d 1027.
In this appeal, Mr. Guilbeaux alleges that the trial court incorrectly sustained exceptions of no cause of action for negligent interference with a business relation because the facts in this case fall squarely within the parameters set forth in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989). The supreme court in 9 to 5 Fashions, Inc., recognized a limited cause of action for tortious interference with contract. The tort was divided into five elements:
(1) The existence of a contract or legally protected interest between the plaintiff and the corporation;
(2) The corporate officer's knowledge of the contract;
(3) The corporate officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome;
(4) Absence of justification on the part of the officer;
(5) Causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought by the officer.
9 to 5 Fashions, Inc., 538 So.2d at 234.
Previously, this court found that the record revealed no facts which supported this claim in relation to the statements published in The Times. Guilbeaux, 661 So.2d at 1033. This finding has not changed, although we wish to modify our language regarding the application of the principles expressed in 9 to 5 Fashions, Inc. Guilbeaux I stated that tortious interference with a contract *1187 applied only to a corporate officer interfering with an employer's contractual relations with third persons. That language is too limiting. Instead, we agree with our circuit's recent opinion in Cowen v. Steiner, 96-830 (La.App. 3 Cir. 1/22/97); 689 So.2d 516 which extended 9 to 5 Fashions, Inc. beyond the circumscribed sphere of a corporate officer. Even if this court would consider Mr. Kean as a corporate officer of Kevin Kean Company, there is still no evidence of a contractual relationship existing between Mr. Guilbeaux and Mr. Kean, nor is there evidence of a contractual relationship between Mr. Guilbeaux and Grand Casinos. The record simply does not support an action in tortious interference with business relations.
This court also previously found that evidence to support a cause of action for intentional infliction of emotional distress is lacking. Guilbeaux, 661 So.2d 1027. There is no additional information in the record to support this claim. In order to maintain such as cause of action, the following must be established:
(1) the conduct of the defendant was extreme and outrageous;
(2) the emotional distress suffered by the plaintiff was severe; and,
(3) the defendant desired to inflict severe emotional or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct.
White v. Monsanto, Co., 585 So.2d 1205, 1209 (La.1991). Extreme or outrageous conduct is that which is so atrocious that it crosses the line of decency and is intolerable to a civilized society. White, 585 So.2d 1205. The distress suffered must be such that a reasonable person could not endure it. White, 585 So.2d 1205. The defendant must desire to inflict emotional distress or must know that such distress will likely occur in reaction to his conduct. White, 585 So.2d 1205. However, "the conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." White, 585 So.2d at 1210.
As originally found in Guilbeaux I, the facts in this case are not sufficient to establish a claim in intentional infliction of emotional distress. Although the record establishes that Mr. Guilbeaux may have experienced some amount of humiliation, embarrassment or worry, it does not establish that Mr. Guilbeaux suffered severe emotional distress, nor does it establish that Mr. Kean or Grand Casinos intended to inflict or knew that severe emotional distress would most likely result from the statements made by Mr. Kean.
Mr. Guilbeaux suggests that Mr. Kean's conduct was extreme and outrageous because he made these statements on more than one occasion. The law to which Mr. Guilbeaux refers is that which applies to offensive conduct in the workplace environment where a cause of action is recognized for conduct occurring in a pattern of deliberate, repeated harassment over a period of time. Wright v. Otis Engineering Corp., 94-257 (La.App. 3 Cir. 10/5/94); 643 So.2d 484; Bustamento v. Tucker, 607 So.2d 532 (La.1992); White v. Monsanto Co., 585 So.2d 1205 (La.1991). Certainly the facts in this case do not involve conduct in a workplace environment. The record also does not support a conclusion that Mr. Kean made these statements in a repetitive pattern for any duration.

Summary Judgment
Appellate courts perform a de novo review upon a motion for summary judgment exercising the same criteria used in a district court's determination of whether summary judgment is appropriate. Dauzat v. Hartford Ins. Co. of the Midwest, 95-50 (La.App. 3 Cir. 5/3/95); 657 So.2d 188. A motion for summary judgment is granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The mover must establish that no disputes over material facts exist. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342 (La.1991). A trial on the merits must take place if there is any reasonable doubt as to the material facts when considering a summary judgment motion. *1188 Lewis v. Rodriguez, 95-1035 (La.App. 3 Cir. 3/20/96); 671 So.2d 1062.
There is a specialized summary judgment standard used in some defamation cases which places a heavy burden on the defamation plaintiff. To defeat a motion for summary judgment, the defamation plaintiff must provide evidence of sufficient quality and quantity to demonstrate that he will likely be able to meet the burden of proof at trial. Sassone v. Elder, 626 So.2d 345 (La. 1993). If this type of evidence is not produced by the defamation plaintiff, there is no genuine issue of material fact and summary judgment should be granted. Sassone, 626 So.2d 345.
The court in Sassone expressed various policy reasons as to why defamation plaintiffs have a higher burden of proof in summary judgment motions than other plaintiffs. The court employs a higher standard because a large number of meritless defamation cases filed against the media may infringe upon the constitutional rights of the press. Sassone 626 So.2d 345. The court stated:
Because the threat of unmeritorious litigation could otherwise have a chilling effect on the freedom of the press, adequate protection of that constitutional guarantee requires that plaintiffs in defamation cases demonstrate at an early stage that they can meet their burden of proof at trial. Otherwise, media defendants will be subjected by even the threat of unmeritorious action to an inordinate amount of self-censorship which could significantly infringe upon their constitutionally protected freedom. In cases affecting the exercise of freedom of the press, proper summary practice is essential.
Sassone, 626 So.2d at 351.
Although we recognize the need for the standard for summary judgment established in Sassone, it does not apply in this case. The Sassone standard was intended to address the potential chilling effect on the freedom of the press created when plaintiffs file numerous meritless defamation claims against media defendants. The Sassone standard protects the press from self-censorship which may stifle their constitutionally protected freedom. However, this case involves alleged defamatory statements made to private individuals, not the press. We decline to extend the Sassone standard to non-media defendants because private individuals are not subject to a chilling effect on the freedom of the press created when an inordinate amount of unmeritorious defamation claims are filed.
Grand Casinos and Kevin Kean Company did not have a partnership nor did the two entities form a joint venture to build casinos in the Lafayette area. Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law. Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La.App. 3 Cir.1990). Louisiana Civil Code Article 2801 defines partnership as:
[A] juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
A joint venture requires:
(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.
Peterson v. BE & K Inc. of Alabama, 94-0005 (La.App. 1 Cir. 3/3/95); 652 So.2d 617, 623 citing Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212 (La.App. 1 Cir.) writ denied, 458 So.2d 123 (La.1984).
Kevin Kean Company ("KKC") and Grand Casinos formed an agreement in February 1992 which met the elements required for the formation of a joint venture. KKC did agree to assist Grand in the management and construction of casinos and Grand agreed to give KKC twelve and one-half percent *1189 of its distributable profit. Grand also agreed to provide its resources and experience to KKC for its efforts in Louisiana. The agreement also included stock options which were favorable to both KKC and Grand. This agreement, however, only pertains to the construction and management of gaming facilities on Indian Tribal land. The background section of the agreement between KKC and Grand states:
KKC has requested and GCI [Grand] has agreed to provide its assistance, resources and experience in (i) the negotiation of the terms and conditions of management contracts that meet the requirements of the Gaming Act ("Contract") and tribal-state compacts that authorize Class II gaming ("Compact"); (ii) the design, development, construction and financing of facilities for use in the conduct of Indian gaming pursuant to a Contract; (iii) obtaining a constitution and by-laws for the Tunica-Biloxi Tribe to the extent required to authorize a Contract and a Compact; and (iv) the operation of Indian gaming enterprises on behalf of the Tribe pursuant to a Contract.
This language limits the nature of the agreement to that which involves gaming facilities which are authorized by tribal-state compacts. The agreement only pertains to casinos on Tribal land. It does not address Mr. Kean's actions in exploring gaming possibilities in the Lafayette area with Mr. Guilbeaux.
There is no genuine issue of material fact as to whether Mr. Kean was acting as an agent or representative of Grand. Grand was not involved in the negotiations between Mr. Kean and Mr. Guilbeaux regarding gaming operations in the Lafayette area in any way. The nature of the agreement between Grand and KKC was one which only involved gaming operations on Indian land. Since their agreement did not include the operation, management, or construction of Casinos outside of Indian Tribal land, the court may reasonably conclude that Mr. Kean's negotiations were outside the scope of the agreement between Mr. Kean and Grand.
Even if Mr. Kean was authorized by Grand to expand its gaming industry to Lafayette, the motions for summary judgment were properly granted because the words spoken by Mr. Kean are not defamatory as a matter of law. Mr. Guilbeaux alleges that the statements made by Mr. Kean to Ms. Myers were defamatory because they portrayed Mr. Guilbeaux as a person who used physical intimidation as a method of persuasion, which is not an act typically practiced by Mr. Guilbeaux. He also argues that the statements made by Mr. Kean to Ms. Favaloro defamed him because they portrayed him in a manner dissimilar to his personality.
Mr. Guilbeaux must show the following elements to maintain an action in defamation: (1) defamatory words; (2) publication; (3) falsity; (4) actual or implied malice; (5) and resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980). Defamatory words are those which tend to harm one's reputation in the estimation of the community, or cause one to be shunned by third persons. Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790 (La. 1992). Whether a statement is capable of a particular meaning and whether that meaning is defamatory is one for the court. Hebert v. Louisiana Ass'n of Rehabilitation Professionals, Inc., 94-1223 (La.App. 3 Cir. 4/5/95); 653 So.2d 757 citing Bussie v. Lowenthal, 535 So.2d 378 (La.1988). The test is whether the average listener could have reasonably understood that the statement, taken in context, was intended to be defamatory. Wattigny v. Lambert, 408 So.2d 1126 (La. App. 3 Cir.), writ denied, 410 So.2d 760 (La.1981). To be defamatory, the words must be "of and concerning" the plaintiff or they must cast a personal reflection on the plaintiff either directly or indirectly. Gugliuzza, 606 So.2d 790.
The statements and allegations which were made to Ms. Favaloro and Ms. Meyers are substantially the same as those printed in the article in the Times of Acadiana. We agree with Judge Cox's and our previous assessment of the statements made in the article and quote from the well-reasoned opinion which now applies in the context of these statements which are, in essence, the same as those published in the Times of Acadiana. The following are excerpts *1190 of the statements made by Mr. Kean and Judge Cox's reasons for his opinion:
"I know you may be big with these Indians,... you may be big in Nebraska, but you're down here in different territory. If you upset the wrong people, you could find yourself floating in the Vermilion, in jail on legitimate or illegitimate charges or get some people mad and kill your Indian casino deals, or at least slow you up for a long, long time ..."
"As previously stated, in order to be defamatory, the words must be directly or indirectly of a nature to cast a personal reflection of a derogatory nature on the plaintiff. Gugliuzza, Supra. [sic]. The Court finds that the above quoted statement in no way rises to the level of defamation. The language does not contain a threat by plaintiff against Kean. To the contrary, the statement ... suggests the possibility of wrongdoing by `the wrong people' and `some people.' Plaintiff is merely warning Kean of those possibilities."
"Kenneth J. Guilbeaux referred to black residents as `niggers'."
"In certain instances, the use of the word `nigger' may constitute defamation and the Court is cognizant of the many cases which support this result. However, in order to maintain an action in defamation, the words must be `of and concerning' the plaintiff. Gugliuzza, Supra. [sic]. If plaintiff himself had been referred to or addressed in such rude and offensive terms, he may have had a cause of action in defamation. The statement, however, merely attributes the use of this word to plaintiff. The statement is `of and concerning' persons other than plaintiff (3)27"
* * * * * *
"The court finds that none of the statements in plaintiff's petition are defamatory in nature either on their face or in the proper context. Thus, it is unnecessary to consider the other elements necessary to maintain a cause of action in defamation."
After reviewing the record, the above comments and considering those made to Ms. Favaloro and Ms. Myers, an average listener could not have understood the statements to harm Mr. Guilbeaux's reputation in the Lafayette community. We hold that the statements are not defamatory words and find that summary judgment is proper.

IV.

CONCLUSION
For the foregoing reasons, the judgments of the trial court are affirmed at plaintiff's cost.
AFFIRMED.