STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-625

ROBERT GROFF

VERSUS

SOUTHWEST BEVERAGE CO., INC., ET AL.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2005-1432
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and
Marc T. Amy, Judges.

AFFIRMED.

S. Stephen Spring, II
Spring & Spring, LLC
733 East Airport Avenue - Suite 104
Baton Rouge, LA 70806
Telephone: (225) 932-9671
COUNSEL FOR:
    Plaintiff/Appellant - Robert Groff

Scott J. Scofield
Phillip W. DeVilbiss
Scofield, Gerard, Singletary & Pohorelsky
P. O. Drawer 3028
Lake Charles, LA 70602-3028
Telephone: (337) 433-9436
COUNSEL FOR:
    Defendants/Appellees - Southwest Beverage Co., Inc. and George
    Ford

**THIBODEAUX, Chief Judge**.

Plaintiff-appellant, Robert Earl Groff, II, asserts that the trial court erred by granting a summary judgment in favor of Groff's employer, Southwest Beverage Company (Southwest), and the company's Vice President of Sales and Marketing, George Kenneth Ford. The trial court found there was no genuine issue of material fact with respect to Groff's claims of intentional infliction of emotional distress, assault, defamation, hostile work environment, and invasion of privacy. For the following reasons, we affirm.

I.

## ISSUES

We shall consider whether the trial court erred by finding that Groff was unable to sustain his burden of production during a summary judgment proceeding on his claims of (1) intentional infliction of emotional distress, (2) assault, (3) defamation, and (4) invasion of privacy[1], where Groff, who had medically diagnosed emotional problems, endured a supervisor's profanity-filled yelling coupled with pounding on the desk during a single employment disciplinary action at a beer distribution company ("the tirade")[2].

II.

## FACTS

At the time of the tirade, Southwest employed Groff to sell beer for the company. Several years before the tirade, Groff developed emotional stress-related

---

[1]Groff has failed to brief his hostile work environment claim. Therefore, pursuant to Uniform Rules—Court of Appeal, Rule 2-12.4, we treat the issue as abandoned.

[2]In their brief, appellees assigned as error that the trial court admitted into evidence Groff's "significantly self-serving" affidavit and a letter from a psychiatrist to Groff's attorney regarding Groff's mental condition. We do not consider these issues because the appellees failed to file an answer to the appeal pursuant to La.Code Civ.P. art. 2133.

problems for which he was taking various medications. Sometime prior to the tirade, Groff claimed he told two of his supervisors, Robert Gerald Newlan and Terry Lane Royer, about his problems. At a deposition, Newlan admitted having at least two such conversations with Groff at least six months prior to the tirade. Royer denied having any conversations with Groff regarding his problems. Royer further stated in his deposition that Southwest employees commonly joked about Groff's mental condition. Royer maintained that the ridicule prompted him to check Groff's personnel file that revealed nothing about any emotional problems.

On the day of the tirade, March 16, 2004, Southwest held a safety meeting with about forty people. At this meeting, Groff challenged some facts in Southwest Operations Manager's presentation. Ford, who was absent during the interruption but became aware of it, asked Groff and his supervisors, Newlan, Royer, and Alan Flanagan, to remain in the room after the meeting. Ford, separated from Groff by a desk, then started yelling at Groff using numerous profanities and hitting the desk with his hand.[3] Although Groff claimed that he had fear of being struck and that he was apprehensive of an imminent battery while Ford was pounding on the desk, Groff also admitted that Ford did the pounding for emphasis.

---

[3]Groff testified as follows at his deposition:

> George Ford told me to, "Sit the f..k down, shut the f..k up, and wipe that f.....g smile off my face."
>
> . . . .
>
> After that, he moved within about three inches from me, like I said. He was pounding on the desk. He was irate, told me that I was going to apologize to Scott Hale [the Operations Manager] and I told him I was not going to Scott Hale. He got even more irate. It finally came down to, "That's the exact reason why you'll never go anywhere in this company, because of your f.....g mouth. We don't need f.....g people like you around here." At that point in time, with him in my face for that period of time, hitting that desk, I couldn't take anymore. I said, "F..k it. I don't want to work for this company anymore."

A few days after the tirade, Groff gained his job back. He apologized to Ford and admitted to hugging him as "an act of good conduct." About two months later, Groff quit his job with Southwest.

Groff then filed suit claiming intentional infliction of emotional distress, assault, hostile work environment, defamation, and invasion of privacy. After a hearing, the trial court granted Southwest's summary judgment motion against Groff on all claims. The court concluded that Groff failed to offer any persuasive evidence in response to Southwest's motion.

## III.

## STANDARD OF REVIEW

Appellate court reviews summary judgment de novo. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183.

## IV.

## LAW AND DISCUSSION

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Although the initial burden of proof remains with the movant, if the movant will not bear the burden of proof at trial, the movant need not negate all essential elements of the adverse party's claim, action, or defense. La.Code Civ.P. art. 966(C)(2). Instead, the movant must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* Then, the adverse party must produce enough factual support to establish that he will be able to satisfy his

evidentiary burden of proof at trial. *Id.* There is no genuine issue of material fact if the adverse party fails to produce the factual support. *Id.*

## A. Intentional Infliction of Emotional Distress

The essential elements of an intentional infliction of emotional distress claim are: (1) intent to cause (2) severe emotional distress by (3) extreme and outrageous conduct. *White v. Monsato Co.*, 585 So.2d 1205 (La.1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1209. Merely tortious or illegal conduct does not rise to the level of extreme and outrageous. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So.2d 1017.

Our jurisprudence affords greater protection to a plaintiff in an employment setting where the alleged wrongdoer is a supervisor with authority over the plaintiff. *White,* 585 So.2d 1205. Nonetheless, in a workplace environment, intentional infliction of emotional distress claims are usually "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* at 1210. Moreover, when the actor solely insists upon his or her legal rights, extreme and outrageous conduct may be privileged. *White,* 585 So.2d 1205. Thus, a disciplinary action in a workplace environment is ordinarily not actionable. *Id.* This is because a disciplinary action's purpose is to cause some degree of distress. *See Id.*

For example, the supreme court held that for the purposes of an intentional infliction of emotional distress claim, it was not extreme and outrageous for a supervisor to erupt with profanities toward three employees of a refinery because they were not working in a manner he thought they should. *Id.* On the other hand, summary judgment was inappropriate where a supervisor knew that the plaintiff

4

underwent electric shock treatment for severe depression, yet the supervisor continued his daily, loud, profanity-filled tirades, threatening the plaintiff's employment. *Wright v. Otis Eng'g Corp.*, 94-257 (La.App. 3 Cir. 10/5/94), 643 So.2d 484. There, the defendants moved for summary judgment claiming workers' compensation was an exclusive remedy. *Id.* This court held that the plaintiff had enough factual and evidentiary support to create a genuine issue of material fact as to whether the intentional act exception to the workers' compensation regime applied. *See Id.* In this case before us, the question of workers' compensation exclusivity is not the issue.

Although, as Groff correctly points out, summary judgment is often inappropriate when there is a question relating to subjective facts such as intent or knowledge, we need not reach the question of intent in this case. *See Id.* The principal issue here is whether a single outburst of profanity coupled with pounding on the desk in the course of a disciplinary action constitutes conduct so extreme and outrages as to go beyond all bounds of decency, when the plaintiff suffers from emotional problems. While inappropriate, plebeian, crass, and indicating lack of supervisory skills, this single tirade does not satisfy the high standard of an intentional infliction of emotional distress claim.

Ford's lone and inept attempt at a disciplinary action is similar to the supervisor's yelling of profanities at the employees because they were not doing their jobs the way he thought they should. *See White,* 585 So.2d 1205. Conversely, unlike the plaintiff who underwent electric shock treatment for his depression, Groff was not subject to daily, unwarranted, and profane abuse from his supervisor. *See Wright,* 643 So.2d 484. Moreover, the issue here is not whether workers' compensation is an exclusive remedy for Groff. It is whether Groff has failed to produce factual support

5

for an essential element of the intentional infliction of emotional distress claim in response to the defendants' motion for summary judgment. He did.

### B. Assault

"Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La.R.S. 14:36. A battery is an intentional harmful or offensive contact with another. *Caudle v. Betts*, 512 So.2d 389 (La.1987). Mere words do not constitute an assault. *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012 (La.App. 2 Cir. 1987), *writ denied*, 512 So.2d 1183 (La.1987). Yet, a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice. *Id.*

While in his affidavit Groff makes a conclusory statement that he was in apprehension of an imminent battery during the tirade, the issue here is whether Groff submitted enough factual support to create a genuine issue of material fact that he in fact suffered a reasonable apprehension of a battery. He did not. From Groff's own testimony we know there was never any verbal threat of physical harm. Ford had no weapon, he did not move toward Groff in a manner that would indicate a threat of imminent harmful or offensive contact. Ford and Groff were separated by a desk at all times during the tirade. Groff was not alone during the rant; three other persons were in the room. Finally, Groff's own admission that Ford was banging on the desk for emphasis, considerably dilutes Groff's self-serving conclusory affidavit that he was in apprehension. Therefore, Groff has not met his summary judgment burden on this cause of action.

## C. Invasion of Privacy

Invasion of privacy may occur if: 1) one appropriates name or likeness of another for one's own benefit; 2) one unreasonably intrudes upon physical solitude or seclusion of another; 3) one gives publicity which unreasonably places another in a false light before the public; and 4) one unreasonably discloses embarrassing private facts about another to the public. *Jaubert v. Crowley Post-Singal, Inc.*, 375 So.2d 1386 (La.1979).

In his brief, Groff does not clearly indicate which of the above four interests defendants have invaded. Groff merely states that because the tirade was heard beyond the walls of the room, and because Groff's medical condition became common knowledge at his workplace, Groff's privacy was invaded.

Groff submitted no evidence that would suggest that Southwest appropriated Groff's name or likeness or intruded upon his physical solitude, eliminating the first two theories of invasion of privacy. Although Groff alleges that employees other than those present in the room heard the loud tirade, he points to no falsity in Ford's rant. Thus, Groff cannot support the third type of invasion of privacy, i.e., that the defendants gave publicity that unreasonably placed Groff in a false light.

Finally, assuming arguendo that dissemination of Groff's emotional condition could amount to unreasonable public disclosure of embarrassing private facts in the context of a beer distribution enterprise, Groff has not satisfied his summary judgment burden. All we have is Groff's conclusory allegation that Southwest management did it. Although Newlan admits having conversations with Groff about Groff's emotional problems, Newlan denies telling anyone about them. Royer denies ever having a conversation with Groff about his emotional problems.

7

Thus, Groff has not provided enough factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial, and, therefore, there is no genuine issue of material fact.

### D. Defamation

The elements of a defamation claim are: 1) false and defamatory statement about another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; 4) resulting injury. *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So.2d 552.

Groff fails to satisfy his summary judgment burden on the falsity element. Groff asserts "there is clearly a false statement" in the form of "vile obscenities." We, on the other hand, fail to see how the profanities Ford yelled could ever be true or false. Therefore, a summary judgment was appropriate on this issue as well.

V.

### CONCLUSION

Summary judgment in favor of Southwest and Ford is affirmed. Costs of this appeal are assessed to Robert Earl Groff, II.

**AFFIRMED.**