THIBODEAUX, Chief Judge.
| ¶ Defendants, Lake Charles Harbor and Terminal District (LCP) and Cameron LNG, L.L.C. (Cameron LNG), appeal the trial court’s grant of summary judgment in favor of the plaintiff, West Cameron Port, Harbor, and Terminal District (West Cameron), and the denial of LCP’s and Cameron LNG’s motions for summary judgment. LCP and Cameron LNG argue that the trial court erred in its interpretation of statutory and other authorities with respect to LCP’s power to lease to Cameron LNG certain land — outside LCP’s territorial bounds — to construct and operate a liquified natural gas (LNG) facility. LCP and Cameron LNG further maintain that the trial court erred by transferring the ownership of the land at issue to West Cameron. Cameron LNG also argues that because federal law preempts West Cameron’s claim, the trial court erred by denying its lack of subject matter jurisdiction exception.
We reverse because we find that LCP had authority as a Local Sponsor to amend the lease subject to which it bought the land outside its territorial bounds, given (1) that the amendment did not require LCP to conduct port, harbor, and terminal activities in Cameron Parish, and (2) the amendment did not fundamentally change Cameron LNG’s operations so as to, in effect, constitute a new lease. We also find that because this case involves interpretation and construction of state law, Cameron LNG’s lack of subject matter jurisdiction exception is without merit.
I.

ISSUE

We shall consider whether LCP, which indisputably has authority to purchase land in Cameron Parish to maintain the condition of the Calcasieu River Channel (the channel), may amend the lease on the land it owns in Cameron Parish where:
|2(1) LCP bought the land in question subject to an existing lease to a third party that operated a liquified petroleum gas (LPG) facility, and
(2) the third party constructed an LNG plant pursuant to the amended lease.
II.

FACTS

LCP is a landlocked port because the only access for ships to LCP is through the channel that runs through West Cameron’s territory. The channel is a navigable waterway subject to a servitude in favor of the federal government. The Louisiana legislature gave the Governor the authority to enter into agreements with the federal government on behalf of the State or its political subdivisions to assure local cooperation with the federal government. La.R.S. 38:81.[1] In 1961, Gov *581 ernor Jimmie Davis designated LCP the Local Sponsor for the purposes of channel improvements. This designation obligated LCP, without cost to the United States, to provide lands, easements, rights-of-way, and spoil-disposal areas necessary for the construction and maintenance of the channel.
hThe following is a brief history of LCP’s land acquisitions in Cameron Parish. A review of exhibits submitted to this court reveals a lack of evidence that LCP bought, acquired, or expropriated any land in Cameron Parish or anywhere else outside its territory prior to its Local Sponsor designation in 1961. None of the deeds to land in Cameron Parish LCP referenced are before 1961.
Exhibit #D-24a demonstrates that in 1948, LCP’s board adopted a resolution in which it relied on its “plenary jurisdiciton [sic] over the Lake Charles Harbor, Calca-sieu River and all terminal facilities therein within the said Parish of Calcasieu .... ” (Emphasis added). LCP board resolved that it would give assurances of local cooperation to the Secretary of the Army for “that portion of the said work of improvement within the territorial area of the City of Lake Charles and the Parish of Calcasieu, Louisiana, [which] is within the jurisdiction of the [LCP] .... ” (Emphasis added). From this, it is clear that LCP started to act on behalf of the United States to maintain the channel around 1948 but only within Calcasieu Parish.
Attached to the exhibit referencing the 1948 resolution is another board resolution dated February 8,1961 — three weeks after the Governor designated LCP the Local Sponsor on January 18,1961. There, LCP board resolved that it would provide to the United States assurances of local cooperation “for both Calcasieu and Cameron Parishes, Louisiana.... ”
Exhibit # D-74, an affidavit of Channing F. Hayden, Jr., LCP’s Director of Navigation and Security, reveals that before 1960, the “local assurances and obligations were supplied by a combination of the Calcasieu Parish Police Jury, the Cameron Parish Police Jury and the LC Port.” That changed in 1960 when Louisiana’s legislature designated the State of Louisiana to be responsible for the assurances of local cooperation. Then, the Governor designated LCP the Local |4Sponsor. Hayden goes on to state that “[a]s the result of its role as the ‘local sponsor’ of the Channel, the LC Port has thus entered into a series of resolutions, agreements and assurances over the years to the United States and the Corps in connection with the construction, maintenance and operation of the Channel.” (Emphasis added). Hayden then writes that “[i]n Cameron Parish alone, in order to discharge its responsibilities as ‘local sponsor’ for the Channel *582 Project, the LC Port has thus been required to secure more than fifteen (15) such [dredge disposal] sites-” (Emphasis added). Furthermore, Hayden states that “[l]ikewise, the LC Port has obtained numerous other rights of entry, servitudes, easements and/or acquisitions in connection with property located in Cameron Parish in discharge of its responsibilities to serve as the local sponsor of the Channel.(Emphasis added).
In 1999, LCP acquired, for dredge disposal purposes, about two hundred acres of land along the channel in Cameron Parish for five hundred and fifty thousand dollars. At the time of the acquisition, a portion of the land was leased to a third party that operated an LPG facility on that land. That LCP had authority to buy this land is not in dispute.
Both Hayden and Adam McBride, LCP’s Director, swore that LCP bought the property in question under the port’s Local Sponsor authority. In his affidavit, Hayden writes that “[i]n further discharge of its duties and responsibilities as the ‘local sponsor’ for the Channel, the LC Port also purchased on February 1, 1999 a track [sic] of land along the Channel and near Hackberry, LA in Cameron Parish (the ‘Cameron LNG Property1), which is currently leased to Cameron LNG....” (Emphasis added). Exhibit # D-73, McBride’s affidavit, reveals that “[t]he LC Port purchased the Cameron LNG Property in connection with its duties to provide |5for dredge soil disposal areas adjacent to the Channel in its role as ‘local sponsor’ for the channel.” (Emphasis added).
In 2001, the operator of the LPG facility (Cameron LNG’s predecessor) proposed to amend the existing lease to allow for the construction and operation of an LNG plant. With the support of Cameron Police Jury and West Cameron, LCP entered into the amended lease.
Prior to the construction of the LNG facility, the future operator of the facility had to obtain permits and authorizations from various institutions, including the United States Federal Energy Regulatory Commission (FERC). Throughout this lengthy regulatory process, West Cameron and Cameron Parish Police Jury encouraged the development of the LNG project by writing letters of support to FERC.
In its suit, West Cameron sought declaratory relief, injunctive relief, and damages because LCP allegedly engaged in port, harbor, or terminal operations outside its territorial limits. West Cameron requested that the property in question be transferred from LCP to West Cameron. LCP filed a peremptory exception of nonjoinder of Cameron LNG that the trial court granted. West Cameron then amended its petition to name Cameron LNG as a defendant.
LCP answered the petition and filed a reconventional demand. LCP sought declaratory relief that it may maintain the Channel as a Local Sponsor, that the ownership and the lease of the property in question was lawful, and that West Cameron did not have an exclusive authority to operate port, harbor, and terminal facilities within Cameron Parish.
Cameron LNG answered West Cameron’s petition and asserted a cross-claim against LCP for breach of warranty of peaceful possession. Cameron LNG | (¡argued that by filing the peremptory exception of nonjoinder of Cameron LNG, LCP breached its obligation to keep Cameron LNG in peaceful possession of the property. Cameron LNG also filed an exception of lack of subject matter jurisdiction arguing that Congress, by enacting the Natural Gas Act, 15 U.S.C. § 717, intended to occupy the field of natural gas regulation. Cameron LNG maintained *583 that West Cameron’s claims impermissibly interfered with the implementation of the FERC order approving the sitting of the Cameron LNG facility, making West Cameron’s claim preempted by the federal law. Agreeing that there were no material facts in dispute, all parties moved for summary judgment.
The trial court granted a summary judgment in favor of West Cameron and denied LCP and Cameron LNG’s motions and exception. The trial court found that LCP legally bought and owned the land. Yet, the trial court held that by amending the lease, LCP engaged in port, harbor, and terminal activity outside its territorial jurisdiction, thereby making the lease illegal. The trial court then enjoined LCP from owning or operating port, harbor, and terminal facilities through its lease of the property and transferred the ownership of the property to West Cameron, along with its effects, i.e., the amended lease and the past revenue from it. This transfer was subject to the repayment to LCP of the original purchase price and the legal interest.
III.

STANDARD OF REVIEW

Appellate court reviews summary judgment de novo. Guilbeaux v. Times of Acadiana, Inc., 96-860 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, writ denied, 97-1840 (La.10/17/97), 701 So.2d 1327.
JifV.

LAW AND DISCUSSION

This is a case of first impression. It is clear that LCP purchased the land in question under its Local Sponsor authority. We first determine whether LCP, nonetheless, has, under its enabling statutes, the power to acquire land outside its territorial bounds. This is important because land acquisitions under the Local Sponsor authority are limited to those properties that are necessary for the maintenance of the channel. If LCP has authority to acquire land in Cameron Parish under its enabling statutes, the consideration as to whether LCP exceeded its Local Sponsor authority would become unnecessary. This is because LCP’s enabling statutes allow LCP to acquire and lease land for a much broader variety of purposes than does the Local Sponsor designation.
After a careful examination below, we conclude that under its enabling statutes, LCP has no power to acquire land outside its territorial bounds. Therefore, we shall have to consider next whether LCP exceeded its Local Sponsor authority by amending the lease subject to which it legally bought the land. We shall then address the residual issues the parties raised.
(1) LCP’s Authority to Acquire Land Outside its Territorial Limits
We first consider and apply our rules of statutory construction. We then examine the impact of the attempted amendment to LCP’s enabling statutes. We conclude by considering the contemporaneous construction doctrine in the context of LCP’s extraterritorial land acquisitions.
\H(a) The Effect of Generalia Specialibus Non Derogant[2] Principle of Statutory Construction
There is no question that LCP bought the property at issue under its Local Spon *584 sor authority. The brief overview of LCP’s land acquisitions in Cameron Parish discussed above leaves no doubt. These acquisitions were under the authority of the designation supplied by the Governor and not under the authority the legislature granted to LCP in its enabling statutes. Hayden and McBride’s affidavits erase any uncertainty as to which source gave LCP the authority to buy the property in question.
After a careful review of LCP’s enabling statutes in pari materia, this court concludes that LCP has no authority under its enabling statutes to buy land outside its territorial bounds listed in La.R.S. 34:201. Louisiana Revised Statutes 34:203, titled “Powers of board; title to structures and facilities,” 34:215, titled “Powers and authority of district,” and 34:206, titled “Acquisition of lands,” contain provisions regarding LCP’s land acquisition authority. Thus, LCP “may acquire land necessary for the business of the district....” La. R.S. 34:203(A)(2)(c)(iii). Moreover, LCP has the authority “to acquire, by right of eminent domain, purchase, lease, or otherwise, the land that may be necessary for the business of the district, including industrial plant sites and necessary property or appurtenances thereto.... ” La.R.S. 34:215(3). Finally, LCP’s enabling statute our legislature specifically titled “Acquisitions of land” states that
[t]he board may acquire by purchase, donation, expropriation, lease or otherwise, any and all lands in the district needed for railways, warehouses, docks, wharves, sheds, buildings, canals, channels, slips, basins and other facilities to be owned and operated by the board or to lease |9to others for manufacturing, commercial and business purposes to promote the industrial development of the district and it may provide for the payment of such land out of the funds under its control not otherwise specially appropriated.
La.R.S. 34:206 (emphasis added).
In LCP’s enabling statutes, the legislature did not specifically authorize LCP to acquire land outside its territorial bounds. Yet, only one out of the three provisions quoted above, La.R.S. 34:206, contains language that specifically limits LCP’s land acquisitions to LCP’s territorial limits.
Some of the other La.R.S. 34:203 and La.R.S. 34:215 sections that deal with matters other than land acquisitions include “within the district” or similar limiting language. For example, LCP “may acquire or construct industrial plant buildings with necessary machinery and equipment within the district.” La.R.S. 34:203(A)(2)(c)(iv) (emphasis added). Relying on this variable presence of the limiting language in La.R.S. 34:203 and La.R.S. 34:215, LCP argues that while some of LCP’s activities, such as construction of industrial plant buildings, must be within LCP’s territorial limits, other activities, such as land acquisition, need not be so limited. We agree that there is an ambiguity with respect to land acquisitions in La.R.S. 34:203 and in La.R.S. 34:215 because of the variable presence of the limiting language. We do not agree with the conclusion that LCP may acquire land anywhere in this state.
The legislature enacted the original versions of La.R.S. 34:203 and La.R.S. 34:206 in the 1920s. The legislature did not enact La.R.S. 34:215 until 1973. The original version of La.R.S. 34:203 did not contain any specific provisions with respect to land acquisitions. The legislature amended La. R.S. 34:203 and La.R.S. 34:206 in 1958. Thereby, the legislature added, among other provisions, what is now *585 11o34:203(A)(2)(c)(iii), the provision that relates to land acquisitions upon which LCP heavily relies in its brief. The 1958 amendment to La.R.S. 34:206 added a lease and other provisions not relevant to this case. The legislature amended La. R.S. 34:203 in 1987 and in 1991, but those amendments are also not important to the resolution of this case. The legislature enacted La.R.S. 34:215 in 1973 and never amended that provision upon which LCP relies for the authority to acquire land anywhere when it deems the land necessary for its business.
The law should be applied as written if it is clear, unambiguous and does not lead to absurd consequences. Martin v. Safeway Ins. Co. of La., 08-1419 (La.App. 3 Cir. 4/15/09), 26 So.3d 777. “Laws on the same subject matter must be interpreted in reference to each other.” La. Civ.Code art. 13. This means that where statutory provisions are in conflict, laws in pari materia should be construed together and harmonized, if possible. Killeen v. Jenkins, 98-2675 (La.11/5/99), 752 So.2d 146.
“[W]hen two acts are clearly irreconcilable and are so inconsistent that the two cannot have concurrent operation, then the latest enactment should be applied.” Id. at 148. Yet, it is also true that “when two statutes applicable to the same subject appear to be in conflict, the statute that is more specifically directed to the matter at issue must prevail.... ” Andre v. Constr. Material Shop, 93-1212, p. 7 (La.App. 1 Cir. 3/11/94), 633 So.2d 1313, 1318. Furthermore, “the title of a law may be examined to determine its purpose....” Bellsouth Telecomms., Inc. v. City of Lafayette, 05-1478, p. 11 (La.App. 3 Cir. 1/5/06), 919 So.2d 844, 852.
The courts presume that the legislature “enacted the law with full knowledge of all other laws pertaining to the same subject matter” and that “every provision of law was intended to serve some useful purpose....” Martin, 26 So.3d at 780 (quoting Ransome v. Ransome, 01-2361 p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 754). Courts do not presume that “the lawmaker intended for any part of a law to be meaningless....” Id. (Emphasis omitted). Finally, “when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory.” Id.
As their respective titles indicate, La. R.S. 34:203 and La.R.S. 34:215 are outlines of the LCP’s powers and are general in nature. On the other hand, La.R.S. 34:206 specifically deals with land acquisitions. Louisiana Revised Statutes 34:206 clearly limits LCP’s authority to acquire land to its territorial bounds. Moreover, although our legislature enacted La.R.S. 34:215 after the legislature’s last amendment to La.R.S. 34:206, the language relevant to the land acquisitions in La.R.S. 34:215(3) is almost identical to the language in La.R.S. 34:203(A)(2)(c)(iii) and (iv), which is an earlier statute. The only significant difference is the enumeration of the acquisition modes in La.R.S. 34:215. These same acquisition modes are listed in La.R.S. 34:206. With respect to LCP’s authority to acquire land outside its bounds, La.R.S. 34:215 and La.R.S. 34:203 are identically silent.
Moreover, La.R.S. 34:215(3) and La.R.S. 34:206 are not clearly irreconcilable and are not so inconsistent that the two cannot have concurrent operation. An example may make this conclusion clearer: if La. R.S. 34:215(3) read specifically that LCP may acquire land outside its bounds, then the conflict between La.R.S. 34:215(3) and La.R.S. 34:206 would have been more evi *586 dent. As it is, the variable presence of the limiting language in La.R.S. 34:215 makes the land acquisition provision, as written in that statute, slightly ambiguous with respect to 112the extraterritorial land acquisitions. La.R.S. 34:215(3) does not conflict with another statute, i.e., La.R.S. 34:206.
If one reads La.R.S. 34:215(3) in conjunction with La.R.S. 34:206, it becomes clear that the two statutes are not irreconcilable. Instead, the inevitable conclusion is that LCP has no power to acquire land outside its territorial limits. Therefore, even though the legislature enacted La. R.S. 34:215 after the last amendment to La.R.S. 34:206, the later general statute did not repeal the earlier statute dealing with the specific subject of land acquisitions. Thus, our guiding principle of statutory construction here is that specific provisions apply over the general ones.
The following example further aids our reasoning here. Indisputably, LCP may not levy or collect taxes outside its territorial bounds. Yet, La.R.S. 34:203(A)(2)(c)(xiii) that deals with the levy of taxes, like La.R.S. 34:203(A)(2)(e)(iii) that deals with land acquisitions, contains no limiting language. With respect to both powers, there are additional specific statutes that limit LCP’s authority to its territorial limits.
Where the legislature did not enact specific statutes with respect to the powers listed in La.R.S. 34:203 and La.R.S. 34:215, LCP’s argument that some and not its other powers are limited to its boundaries may be true. Yet, it is not so with the power to acquire land. This power has a specific statute, La.R.S. 34:206, and LCP’s construction of La.R.S. 34:203 and 34:215 would render La.R.S. 34:206 nugatory and superfluous. Because our task here is: (1) to harmonize all provisions with respect to LCP’s power to acquire land; (2) to adopt the interpretation that affords a reasonable and practical effect and not the one that renders the statute that specifically deals with the land acquisitions nugatory; and, (3) not to render any part | iaof the law dealing with LCP’s land acquisitions meaningless, we conclude that under its enabling statutes, LCP has no authority to acquire land outside its territorial limits.

(b) The Effect of Contemporaneous Construction Doctrine

While Louisiana courts sharply limit the application of the contemporaneous construction doctrine, we nonetheless may consider a port’s interpretation of the statutes under which it operates. See Clark v. Bd. of Comm’rs, Port of New Orleans, 422 So.2d 247, 251 (La.App. 4 Cir.1982), which quoted Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841, 849 (1947), for the proposition that, “the generally accepted rule [is] that the contemporaneous construction given a statute by those charged with its execution is entitled to great weight and should not be disregarded except for cogent reasons, [but] this rule is not controlling, particularly if such construction is erroneous.”
Here, LCP’s actions indicate that, until very recently, it did not construe its enabling statutes to mean that LCP had the power to acquire land in Cameron Parish. For example, LCP’s resolution of 1948, exhibit # D-24a, demonstrates that in 1948, LCP considered itself bound by its territorial limits with respect to land acquisitions. Exhibits submitted to this court indicate that it was not until 1961, approximately three weeks after the Governor designated LCP a Local Sponsor, that LCP started to acquire property in Cameron Parish. Thus, even after the legislature amended La.R.S. 34:203 in 1958 to include the language upon which LCP currently relies to support its position, LCP acquired no land outside its bounds until its Local Sponsor designation.
*587 Furthermore, when LCP did acquire land in Cameron Parish after its 1961 Local Sponsor designation, it relied on that authority and not on the authority of its enabling statutes to acquire the land. McBride and Hayden’s affidavits provide 114ample support for this conclusion. Thus, since its creation until very recently, LCP itself did not act as if it construed its enabling statutes to authorize LCP’s land acquisition anywhere outside its territorial bounds.
These considerations buttress our conclusion that LCP has no authority under its enabling statutes to acquire land outside its territorial bounds.
(2) LCP’s Authority to Amend the Lease on the Land in Question
Because LCP has a limited authority to acquire land in question for the construction and subsequent maintenance of the channel, we now examine whether LCP exceeded this authority by amending the lease subject to which it bought the land.[3]

(a) Local Sponsor’s Lack of Duty to Dissolve a Pre-existing Lease with a Party that Conducts Activities Unrelated to Channel Maintenance.

The Governor’s designation reads that the local cooperation with the United States means to “[provide without cost to the United States all lands, 11Beasements, rights-of-way, and spoil-disposal areas necessary for the construction and for subsequent maintenance of the project....” (Emphasis added). The project is the “improvement to the Calcasieu River and Pass Navigation Channel.” The relevant questions here is: once LCP determines that a piece of land is necessary for its business as a Local Sponsor to maintain the channel, and that land happens to be encumbered by a lease which does not require LCP to engage in any port, harbor, or terminal activity unrelated to channel maintenance,[4] but does allow the lessee to *588 conduct such activities, does LCP have an obligation to dissolve the lease once it purchases or expropriates the land? The answer to this question is important because if LCP does not have an obligation to dissolve such a lease, the lessee’s ownership and operation of port facilities on the land LCP owns becomes irrelevant to the question whether LCP engages in port activities. A related question is: would a failure to dissolve the lease exceed LCP’s Local Sponsor authority? The answer to both of these questions is “no.”
The designation authorizes LCP to secure all lands, easements, etc., necessary for the channel maintenance. It does not require LCP to secure only unencumbered lands. Moreover, it does not require LCP to eliminate the encumbrances once it acquires the land even if, as here, the encumbrance allows the lessee to conduct port activities.[5] Finally, if the encumbrance does not require LCP 11fito engage in port, harbor, or terminal activity unrelated to channel maintenance, it does not conflict with any entity’s enabling statutes.

(b) LCP’s Authority to Amend the Pre-existing Lease

The next question is whether LCP exceeded its Local Sponsor authority by amending the pre-existing lease. We find significant the following two considerations. First, we need to decide whether the lease amendment amounted to LCP’s engagement in port, harbor, or terminal operations unrelated to channel maintenance outside its territorial jurisdiction. This is important because simultaneous and unlimited port, harbor, or terminal operations by two different authorities in the same geographical area may lead to a conflict resulting in neither being able to effectively perform their duties, thereby impeding commerce activities.
Second, we need to decide whether the amendment changed the lease so fundamentally as to, in effect, constitute a new lease. This is important because then the question becomes not whether LCP may merely amend an existing lease but whether LCP may lease property it acquired under its authority as a Local Sponsor.
We conclude that this amendment of the pre-existing lease did not amount to an engagement in port operations. West Cameron strenuously argues that McBride, LCP’s .Director, admitted that the operations of Cameron LNG necessarily involve LCP’s port activity. Yet, this is not what McBride stated. West Cameron’s attorney specifically asked McBride: “[i]s the Cameron LNG facility a port, harbor, and terminal service that gets activity of the Lake Charles Port ... ?” McBride did not answer in the affirmative but, instead, replied that “[t]he lease is a— an activity of the Port.” We note that an activity of the port is not necessarily a port activity. For example, when LCP expropriates property in Cameron Parish as a Local Sponsor, it acts as a port, the Lake Charles Port, because this entity cannot *589 act as something other |17than the Lake Charles Port. Nevertheless, LCP, thereby, does not necessarily engage in a port activity. Similarly, the act of lease amendment can be an activity of the port, the Lake Charles Port, without being a port activity.
Moreover, whether LCP engaged port, harbor, or terminal activities is, in our view, a legal conclusion. Thus, even if McBride conceded that LCP conducted port activities, this court is in no way bound by his opinion. in
Admittedly, Cameron LNG engages in port activities by virtue of loading, unloading, and docking of vessels. Yet, LCP conducts none of those activities. Nor does it own any docks, wharves, slips, and other facilities necessary for port, harbor, or terminal operations on the land in question. Instead, Cameron LNG owns, operates, and maintains all of those facilities. LCP simply receives lease payments.
We also conclude that the amendment of the original lease did not change operations of the parties subject to the lease so drastically as to constitute, in effect, a new lease. While the size and the cost of the facilities on the leased land increased dramatically, as well as the lease payments LCP collects, the nature of the operations changed from handling liquified petroleum gas to handling liquified natural gas. In other words, the lessee did not, for example, change its business to a retail store or a theme park. The essence of the operations is still limited to transporting, handling, processing, etc. of petroleum products.
Having the above two determinations in mind, we do not conclude that LCP exceeded its Local Sponsor authority by amending the pre-existing lease. True, the Governor did not specifically authorize LCP to lease anything under its Local Sponsor designation. It is also true that the designation document did not expressly prohibit the leasing activity. The question then becomes: whether the language I ^“necessary for the maintenance” of the channel encompasses LCP’s ability to amend encumbrances subject to which the Local Sponsor acquired the property where (1) the amendment did not require LCP to engage in port, harbor, or terminal activities unrelated to channel maintenance, and (2) did not fundamentally change the nature of the lessee’s operations so as to, in effect, constitute a new lease. We conclude that it does.
The phrase “necessary for subsequent maintenance” is broader than something like, “necessary for dredging and disposal of dredging materials” but not as broad as something like, “necessary for the business.” “Necessary for subsequent maintenance” may or may not encompass leasing activities and may encompass some leasing activities and not others.[6] We need not resolve these questions now. This is because we hold that this language is broad enough to include amendments to the lease subject to which LCP acquired the property where (1) the amendments to the lease did not require LCP to engage in port, harbor, or terminal activities unrelated to channel maintenance in Cameron Parish, and (2) the amendment did not fundamentally change the nature of the lessee’s operations.
Based on the considerations above, LCP’s failure to dissolve the pre-existing lease and LCP’s subsequent amendment of that lease were within LCP’s authority and are, therefore, valid. Thus, we need not *590 address the impropriety or propriety of the trial court’s transfer of the property in question to West Cameron. Similarly, our decision renders moot Cameron LNG’s arguments with respect to warranty breach.
|19Finally, this case involves interpretation and construction of the state statutes and the Governor’s order pursuant to a state legislature’s delegation of authority. It has nothing to do with natural gas or energy regulation. Therefore, Cameron LNG’s assertions that the trial court lacked subject matter jurisdiction because of the federal preemption are without merit.
V.

CONCLUSION

The trial court’s judgment in favor of West Cameron Port, Harbor and Terminal District is reversed. This court finds that the Lake Charles Harbor and Terminal District’s failure to dissolve a pre-existing lease and the subsequent amendment of that lease were legal and, therefore, valid exercises of Lake Charles Harbor and Terminal District’s Local Sponsor authority.
Costs of this appeal are assessed to West Cameron Port, Harbor and Terminal District.
REVERSED AND RENDERED.
COOKS, J., dissents and assigns written reasons.
GREMILLION, J., joins in Judge Cooks’ dissent.

. The Governor on behalf of the state or ... any section of the state may make and execute with any person, including the Secretary of the Army, the Chief of Engineers of the Unit *581 ed States Army, or any other authorized representative of the federal government, any contract, agreement, arrangement, or undertaking, transaction, designed, or intended to carry out, effect, accomplish, or secure the benefits and obligations of any state or federal law, now existing or hereafter enacted, with respect to the control of flood waters, the navigation or use of the rivers flowing through this state or ... diversion channels for flood waters and areas, and all similar undertakings, whether specifically mentioned herein or not.
[[Image here]]
The Governor may utilize to whatever extent they are empowered by law to function the various levee boards or boards of levee commissioners of this state, the Department of Public Works, or any other state board, commission, agency, or political subdivision. These authorities shall, to the fullest extent of their capacity, fully cooperate and coordinate their efforts under his direction in carrying out and accomplishing the obligations and requirements of the agreements and undertakings.
La.R.S. 38:81.

. “[Latin clause meaning 'general things do not derogate from specific things’] The doctrine holding that general words in a later statute do not repeal an earlier statutory pro *584 vision dealing with a special subject.” Black's Law Dictionary 692 (7th ed.1999).

. LCP argues that under its enabling statutes, i.e., La.R.S. 34:203(A)(2)(c)(v) and La.R.S. 34:215(4), it may lease the land for processing, manufacturing, commercial, and business purposes no matter how or where it acquired the land. Specifically, LCP maintains that even if it acquired land under its authority as a Local Sponsor, it may lease the land according to the terms of La.R.S. 34:203(A)(2)(c)(v) and La.R.S. 34:215(4). In essence, LCP takes a position that the leasing provision and the land acquisition provision of La.R.S. 34:203 and 34:215 are independent of each other. In effect, LCP would "bootstrap” its Local Sponsor authority to its enabling statutes.
The question as to whether LCP may lease property it acquired under the authority other than its enabling statutes is not before this court. Instead, the question we need to resolve is whether LCP has authority to amend the pre-existing lease on the property it bought under its Local Sponsor authority. Therefore, we do not address whether the lease provision and the land acquisition provision in La.R.S. 34:203 and in 34:215 are independent of each other.
In addition, the recurrent argument in LCP’s brief is that if it has the power to sell the property in question, it should logically follow that it has the power to lease it because the power to sell is greater than the power to lease. While LCP cites several cases for this proposition, we note that the greater right does not necessarily include the lesser one. See City of Shreveport v. Case, 198 La. 702, 4 So.2d 801 (1941) (holding that even if the city, in the protection of its water supply, had the right to prohibit all craft upon the waters of the lake, it does not necessarily follow that the city had the right to regulate the use of water craft by imposing muffler requirements).
In any event, as explained above, in this case, we need not address the issue of LCP’s ability to lease the lands it acquired under its Local Sponsor authority. Our issue is a more limited one, i.e., whether LCP may amend a pre-existing lease.

. We note that under LCP’s Local Sponsor designation, LCP probably has authority to conduct certain port operations in Cameron Parish. For example, if LCP needs a dock, *588 wharf, or pier to unload dredge materials on the property it owns in Cameron Parish, LCP probably may construct, own, and operate the dock, wharf, or pier for that purpose. Thus, the issue in this case is not whether LCP may generally conduct port operations outside its territorial limits. The issue is whether it may do so in a way so as to exceed its Local Sponsor authority, i.e., conduct port operations in Cameron Parish unrelated to channel maintenance.

. As stated in the "Facts” section of this opinion, prior to the amendments of the lease to construct an LNG facility, the lessee operated an LPG facility. In connection with the LPG operations, the lessee, before the lease amendments, owned and operated docking, terminal, and other port facilities on the property in question.

. For example, we do not reach the question as to whether LCP could lease to a dredging subcontractor a portion of the land it acquired as a Local Sponsor for that subcontractor to dispose of the dredge materials in the course of channel maintenance.